IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CR-18-156-D |
| GERMAINE COULTER, SR., and ELIZABETH ANDRADE, | ) ) ) ) |
| Defendants. | ) ) |

**ORDER**

Before the Court is the government's Motion for Restitution [Doc. No. 272], to which Ms. Andrade responded [Doc. No. 279]. After the Court stayed determination of restitution pending the Tenth Circuit's decision in *United States v. Anthony*, 22 F.4th 943 (10th Cir. 2022) ("*Anthony II*"), as explained in greater detail below, the government filed a Supplemental Brief Regarding Restitution [Doc. No. 333], to which each Defendant responded [Doc. Nos. 334, 338].¹ On December 28, 2023, the Court held a hearing on the

---

¹ A brief explanation of the procedural history of the *Anthony* cases is helpful. In *United States v. Anthony*, 942 F.3d 955 (10th Cir. 2019), the Tenth Circuit vacated the district court's restitution order and held that the Trafficking Victims Protection Reauthorization Act ("TVPRA") requires that the government, in seeking restitution under the TVPRA, must establish that a defendant's acts were the but-for and proximate cause of a victim's harm. The Court refers to this decision as "*Anthony I*." As part of its decision in *Anthony I*, the Tenth Circuit remanded the case to the district court for recalculation of restitution. After the district court declined to award any restitution on remand, the government appealed. The government's appeal resulted in the Tenth Circuit's decision in *United States v. Anthony*, 22 F.4th 943 (10th Cir. 2022), in which the court reaffirmed the but-for and proximate causation standard and held that the government failed to satisfy the causation requirements. The Court refers to this decision as "*Anthony II*."

restitution issue and heard argument from counsel for all parties, along with testimony from the government's retained expert, Dr. C. David Missar, Ph.D.

For the reasons set forth below, the Court orders restitution against Mr. Coulter and Ms. Andrade, and adopts a hybrid approach. Additionally, the Court imposes a per-count $5,000 special assessment on Mr. Coulter and Ms. Andrade, pursuant to the Justice for Victims of Trafficking Act ("JVTA").

## BACKGROUND

Defendants Germaine Coulter, Sr. and Elizabeth Andrade were charged by indictment on June 20, 2018. On July 19, 2018, Ms. Andrade pleaded guilty to a one-count superseding information charging her with conspiracy to commit child sex trafficking of Doe 1 and Doe 2, in violation of 18 U.S.C. § 1594(c). Ms. Andrade's plea agreement requires her to pay restitution to all victims of her relevant conduct and to pay a combined special assessment of $5,100. *See* Andrade Plea Agreement [Doc. No. 39] ¶¶ 4, 5. On July 22, 2019, Mr. Coulter was convicted by a jury of child sex trafficking and conspiracy to commit child sex trafficking of Doe 1 and Doe 2, both of whom testified before the jury. *See* Jury Verdict [Doc. No. 197].

On December 10, 2019, the Court sentenced Ms. Andrade to 78 months imprisonment and five years of supervised release. *See* Andrade Judgment [Doc. No. 241]. During the sentencing hearing, the Court indicated that restitution as to Ms. Andrade would be determined at a later date. *See* 12/10/2019 Minute Entry [Doc. No. 239]. On September 28, 2021, the Court sentenced Mr. Coulter to 360 months imprisonment and a lifetime term of supervised release. *See* Coulter Judgment [Doc. No. 298]. As with Ms. Andrade, the

Court indicated that restitution as to Mr. Coulter would be determined at a later date. *See* 9/28/2021 Minute Entry [Doc. No. 296].

On June 19, 2020, after Ms. Andrade was sentenced but before Mr. Coulter was sentenced, the government filed a motion for restitution [Doc. No. 272], in which it requested that the Court order mandatory restitution against Mr. Coulter and Ms. Andrade and require both Defendants to pay the $5,000 special assessment under the JVTA for each count of conviction. Ms. Andrade filed a response on August 3, 2020 [Doc. No. 279]. But before Mr. Coulter filed a response, the government moved to stay final determination of restitution pending the Tenth Circuit's decision in *Anthony II*, a case involving the same restitution statutes at issue here. *See* Gov't Mot. to Stay [Doc. No. 293]. On June 3, 2021, the Court stayed the restitution issue and ordered the parties to file a joint status report within seven days of the Tenth Circuit's decision in *Anthony II*. 6/3/2021 Order [Doc. No. 294].

On January 12, 2022, the Tenth Circuit issued a published opinion in *Anthony II*. The Court, therefore, ordered the government to file a supplement to its motion for restitution and provided Defendants the opportunity to respond. *See* 1/24/2022 Order [Doc. No. 332]. The government filed its supplement on February 24, 2022 [Doc. No. 333], and Defendants each filed a response [Doc. Nos. 334, 338].

On December 28, 2023, the Court held a hearing on the restitution issue and heard argument from counsel for all parties. The Court also heard extensive testimony from the

3

government's retained expert, Dr. C. David Missar, Ph.D., who opines that Doe 1 is entitled to $1,145,900 in restitution and Doe 2 is entitled to $967,100 in restitution.[2]

## DISCUSSION

In its motion for restitution, the government seeks two orders: (1) an order imposing joint-and-several restitution against the Defendants under the TVPRA; and (2) an order requiring the Defendants to pay the $5,000, per-count special assessment, as required by the JVTA. The Court addresses each request in turn.

**I.     Doe 1 and Doe 2 are entitled to restitution under the TVPRA.**

**A.     Doe 1 is entitled to $198,000 in restitution.**

The government seeks a restitution order in line with its retained expert, Dr. C. David Missar's, psychological evaluation of Doe 1. In his evaluation, Dr. Missar opines that Doe 1 is entitled to $1,145,900 in restitution to account for seven categories of expenses:

| | | |
|---|---|---|
| Intensive individual therapy | (2 years x 50 wk/yr x 2 times/wk x $150/hr) | = $ 30,000.00 |
| Ongoing individual therapy | (59 years x 50 wk/yr x $150/hr) | = $ 442,500.00 |
| Group therapy | (10 years x 50 wk/yr x $100/hr) | = $ 50,000.00 |
| Psychiatrist | (2 years x 12 visits/yr x $200/hr) | = $ 4,800.00 |
| Psychiatrist | (59 years x 2 visits/yr x $200/hr) | = $ 23,600.00 |
| Medications | (59 years x $5,000/yr) | = $ 295,000.00 |
| Lost work wages | | = $ 300,000.00 |
| Total | | $ 1,145,900.00 |

---

[2] Also in the courtroom during the restitution hearing were the guardians ad litem for Doe 1 and Doe 2, Christine M. Cave and LeAnne Burnett, who were previously appointed by the Court. *See* 10/1/2018 Order [Doc. No. 57]. Due to timing constraints, Ms. Cave and Ms. Burnett were not able to testify on behalf of Doe 1 and Doe 2 during the restitution hearing. However, the Court granted Ms. Cave's post-hearing motion to submit materials in support of an order for restitution, all of which the Court has considered. *See* Guardian Ad Litem's Br. in Support [Doc. No. 366].

Gov't Hearing Ex. 5 at 8. To support the above figures, Dr. Missar relies on interviews (including one with Doe 1), transcripts and documents from Mr. Coulter's trial, medical records, victim impact statements, and various pleadings and orders filed in this case. *See id.* at 1-2.

In response to the government's motion, Mr. Coulter and Ms. Andrade each argue that the government fails to satisfy the but-for causation standard set forth in *Anthony I* and reaffirmed in *Anthony II*, thus rendering any restitution award improper. In his briefing, Mr. Coulter relies on Doe 2's purported statement that "Doe 1 had a prior history of being a prostitute." Coulter Resp. to Gov't Supp. at 1.[3] At the hearing, Mr. Coulter's counsel also focused on a portion of Doe 1's prior medical records, which reference Doe 1 being molested by a family member at age 7.[4]

In her briefing, Ms. Andrade similarly argues that the amount included in Dr. Missar's evaluation is speculative and does not differentiate between past traumas suffered by Doe 1 and those caused by Ms. Andrade. *See* Andrade Resp. to Gov't Mot. for Restitution at 5-6; Andrade Resp. to Gov't Supp. at 3-4. At the hearing, Ms. Andrade's counsel also focused on Doe 1's prior medical records, along with the purported speculative nature of Dr. Missar's evaluation.

---

[3] Mr. Coulter also relies heavily on Dr. Missar not having interviewed Doe 1 before preparing his initial evaluation. However, Dr. Missar was ultimately able to interview Doe 1 and incorporated information obtained from that interview into his amended evaluation.

[4] Dr. Missar also testified that, although it was not included in his amended evaluation, Doe 1 denied having had a pimp prior to being approached by Doe 2 about potentially working for Mr. Coulter and Ms. Andrade. Dr. Missar's testimony is consistent with the government's representations in its Supplemental Brief. *See* Gov't Supp. at 8.

5

Upon consideration of Dr. Missar's evaluation, the evidence and testimony presented at the restitution hearing, the evidence and testimony presented during Mr. Coulter's trial, and the record as a whole, the Court finds, by a preponderance of the evidence, that Doe 1 is a victim under the TVPRA and is entitled to restitution. The Court further finds that Mr. Coulter and Ms. Andrade were the but-for and proximate cause of Doe 1's trauma. *See Anthony I*, 942 F.3d at 966 ("In the circumstances of this case, though, we conclude that both statutes limit restitution to losses that the defendant's conduct has directly and proximately caused.").

During the hearing, defense counsel questioned Dr. Missar on other potential sources of trauma from Doe 1's past in an attempt to show that Mr. Coulter and Ms. Andrade were not the but-for causes of Doe 1's trauma. The Court finds defense counsel's attempt unpersuasive, but acknowledges the unfortunate truth: Doe 1 has been impacted by trauma at several points in her life. However, this type of case—involving the sex trafficking of minors—will not necessarily involve individuals possessing a blank slate, unaffected by any sort of trauma before being trafficked. The Court thinks it unlikely that the Tenth Circuit, in requiring the government to establish but-for and proximate causation, intended to disqualify every trafficking victim who, at some point in their life, suffered from trauma unrelated to the offense conduct. The Court declines to endorse such an approach here. *See Anthony I*, 942 F.3d at 969-70 (recognizing the "difficulty in setting a restitution amount in cases like this one, where the victim's asserted losses overlap with similar harms that occurred before the events at issue," and noting that the district court

"need not calculate the harms with 'exact precision'") (quoting *United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015)).

As for the specific amount of restitution owed, the Court finds that Doe 1 is entitled to $198,000. The Court accepts Dr. Missar's recommendation that, due to the various traumas inflicted on her by Mr. Coulter and Ms. Andrade, Doe 1 will likely need intensive individual therapy and agrees that two years is an appropriate duration for such treatment. The same is true for Dr. Missar's recommendation of ten years of group therapy, as well as the initial two-year duration of psychiatrist visits. However, Dr. Missar recommends ongoing individual therapy, psychiatrist visits, and medications for Doe 1's lifetime. The Court finds that these recommendations are overly speculative. Further, the Court declines to award any amount for lost work wages, as Dr. Missar's recommendation rests on several assumptions, the most significant of which is that Doe 1 will never complete any college coursework. Moreover, at the hearing, the government acknowledged the speculative nature of the lost wages component.

The Court, therefore, finds that Doe 1 is entitled to $198,000 in restitution to account for the following expenses set forth in Dr. Missar's evaluation:

| Intensive individual therapy | 2 years x 50 weeks/year x 2 times/week x $150/hour | $30,000 |
|---|---|---|
| Ongoing individual therapy | 8 years x 50 weeks/year x $150/hour | $60,000 |
| Group therapy | 10 years x 50 weeks/year x $100/hour | $50,000 |
| Psychiatrist | 2 years x 12 visits/year x $200/hour | $4,800 |
| Psychiatrist | 8 years x 2 visits/year x $200/hour | $3,200 |
| Medications | 10 years x $5,000/year | $50,000 |
| Lost work wages | None | $0 |
| | | **$198,000** |

### B. Doe 2 is entitled to $188,000 in restitution.

As for Doe 2, the government likewise seeks a restitution order in line with Dr. Missar's evaluation, in which he opines that Doe 2 is entitled to $967,100 in restitution to account for eight categories of expenses:

| | | |
|---|---|---|
| Intensive individual therapy | (2 years x 50 wk/yr x 2 times/wk x $150/hr) | = $  30,000.00 |
| Ongoing individual therapy | (61 years x 50 wk/yr x $150/hr) | = $ 457,500.00 |
| Group therapy | (10 years x 50 wk/yr x $100/hr) | = $  50,000.00 |
| Psychiatrist | (2 years x 12 visits/yr x $200/hr) | = $   4,800.00 |
| Psychiatrist | (61 years x 2 visits/yr x $200/hr) | = $  24,400.00 |
| Medication – mood | (61 years x $4,000/yr) | = $ 244,000.00 |
| Medication – ADHD | (61 years x $2,400/yr) | = $ 146,400.00 |
| Tutoring | (4 years x 50 wk/yr x 2x/week x $25/hr) | = $  10,000.00 |
| Total | | $ 967,100.00 |

Gov't Hearing Ex. 6 at 12. To support the above figures, as with Doe 1, Dr. Missar relies on interviews (including one with Doe 2), transcripts and documents from Mr. Coulter's trial, medical records, victim impact statements, and various pleadings and orders filed in this case. *See id.* at 1-2.

As a threshold matter, Ms. Andrade argues that Doe 2 is not a "victim" as defined by the TVPRA. *See* Andrade Resp. to Gov't Supp. at 2-3. Ms. Andrade claims that "there is no competent evidence before this Court that Jane Doe 2 was a victim of the offense of conviction for purposes of the TVPRA." *Id.* at 2. Therefore, Ms. Andrade continues, any restitution order as to Doe 2 is an "illegal sentence." *Id.* at 3.

The Court disagrees and rejects Ms. Andrade's narrow interpretation of the term "victim." The TVPRA defines a "victim" as an "individual harmed as a result of a crime under this chapter." 18 U.S.C. § 1593(c). Based on the extensive evidence introduced during Mr. Coulter's trial, as well as the existing record regarding the restitution issue, it is

8

well-established that Doe 2 was "harmed as a result" of the Defendants' crimes. Perhaps most notably, Mr. Coulter enlisted Doe 2—a child—to recruit other young women to become prostitutes for Mr. Coulter and Ms. Andrade's criminal conspiracy. And Doe 2 did, in fact, recruit at least one other young woman—Doe 1. The record likewise supports the conclusion that Doe 2 was involved in the handling of Doe 1, which, again, was a direct result of Mr. Coulter using her as part of his and Ms. Andrade's criminal conspiracy. The Court, therefore, finds that Doe 2 falls within the TVPRA's definition of "victim."

For the reasons set forth above regarding Doe 1, the Court finds, by a preponderance of the evidence, that Doe 2 is a victim under the TVPRA and is entitled to restitution. The Court further finds that Mr. Coulter and Ms. Andrade were the but-for and proximate cause of Doe 2's trauma. However, the Court again finds that several of Dr. Missar's recommended amounts hinge on too much speculation to support a restitution award in the amount sought.

Like Doe 1, the Court accepts Dr. Missar's recommendation that, due to the various traumas inflicted on her by Mr. Coulter and Ms. Andrade, Doe 2 will likely need intensive individual therapy and agrees that two years is an appropriate duration for such treatment. The same is true for Dr. Missar's recommendation of ten years of group therapy, as well as the initial two-year duration of psychiatrist visits. However, Dr. Missar recommends ongoing individual therapy and psychiatrist visits for Doe 2's lifetime. For the same reasons set forth above regarding Doe 1, the Court finds that these recommendations are overly speculative. Further, the Court declines to award any amount for ADHD medications or tutoring. At the hearing, Dr. Missar conceded that Doe 2's ADHD diagnosis and reading

9

disability (which forms the basis for the recommended tutoring) pre-date her involvement with Defendants.

The Court, therefore, finds that Doe 2 is entitled to $188,000 in restitution to account for the following expenses set forth in Dr. Missar's evaluation:

| Intensive individual therapy | 2 years x 50 weeks/year x 2 times/week x $150/hour | $30,000 |
|---|---|---|
| Ongoing individual therapy | 8 years x 50 weeks/year x $150/hour | $60,000 |
| Group therapy | 10 years x 50 weeks/year x $100/hour | $50,000 |
| Psychiatrist | 2 years x 12 visits/year x $200/hour | $4,800 |
| Psychiatrist | 8 years x 2 visits/year x $200/hour | $3,200 |
| Medication – Mood | 10 years x $4,000/year | $40,000 |
| Medication – ADHD | None | $0 |
| Tutoring | None | $0 |
| | | **$188,000** |

### C. The Court, in exercising its discretion, adopts a hybrid joint-and-several restitution approach.

The Court, in exercising its discretion and taking into account the role each Defendant played in the sex trafficking operation, adopts a hybrid joint-and-several restitution approach. This type of approach has been viewed favorably by numerous appellate courts, and aims to balance the statutory requirement that victims be made whole with the reality that some defendants are more culpable than their counterparts.[5] Indeed, "the hybrid approach by its very nature tempers any possible unfairness in making all co-defendants liable for the full amount of a victim's injury by limiting the amount that minor

---

[5] *See, e.g.*, *United States v. Yalincak*, 30 F.4th 115, 127 (2d Cir. 2022); *United States v. Sheets*, 814 F.3d 256 (5th Cir. 2016); *United States v. Scott*, 270 F.3d 30 (1st Cir. 2001). The Court has not found a Tenth Circuit case addressing the issue. *See United States v. Salti*, No. 14-40138-01-DDC, 2021 WL 4243128, at *6 (D. Kan. Sept. 17, 2021) ("Neither party (nor the FPD) has suggested that the Tenth Circuit has reached the issue presented here. In this circumstance, the court predicts that the Circuit would adopt the holding in *Sheets*.").

participants in the scheme can be made to pay." *United States v. Yalincak*, 30 F.4th 115, 127 (2d Cir. 2022). The *Yalincak* court succinctly described the hybrid approach as follows:

> The hybrid restitution order combines the discretion and apportionment authority permitted by § 3664(h) with the common law concept of joint and several liability. It thus accounts for multiple defendants' varying degrees of contribution to a victim's total loss, while also prioritizing the victim's likelihood of recovery. In such orders, the most significant offender may be held liable for the full amount of the loss, while lesser participants are required to contribute lesser amounts.

*Id.* at 124.

Here, the Court, in adopting a hybrid approach, imposes the following restitution amounts as to Doe 1 and Doe 2 on a joint-and-several basis:

| Doe 1 | Doe 2 |
|---|---|
| Mr. Coulter: $198,000 | Mr. Coulter: $188,000 |
| Ms. Andrade: $69,300 | Ms. Andrade: $65,800 |

In understanding the hybrid approach adopted in this case, it is helpful to keep two principles in mind: (1) a victim cannot be compensated more than the total amount provided for in the restitution order; and (2) a defendant cannot pay more than their share, as set forth in the restitution order. The *Yalincak* court further explained how these two principles operate in practice:

> A restitution order creates a personal liability on the part of the defendant on whom it is imposed. While that obligation can be satisfied if other defendants have made the victim whole, that is an artifact of the rule that a victim may not receive more in restitution than the total amount of his loss. Thus, if Hakan paid a total of $750,000 to W.A-M. [*i.e.*, the total amount of restitution W.A-M is owed], W.A-M. would be made whole and both defendants' obligations would be deemed satisfied. But that rule does not absolve any defendant from the obligation to pay the restitution that she has been sentenced to pay before the victim has been fully satisfied.

11

*Yalincak*, 30 F.4th at 127.[6]

## II.  Mr. Coulter and Ms. Andrade are subject to the JVTA's mandatory, per-count special assessment.

In addition to an order of restitution, the government seeks a $5,000 per-count special assessment imposed on each Defendant, pursuant to the JVTA. 28 U.S.C. § 3014 states, *inter alia*:

> Beginning on the date of enactment of the Justice for Victims of Trafficking Act of 2015 and ending on December 23, 2024, in addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under--
>
> > (1) chapter 77 (relating to peonage, slavery, and trafficking in persons) . . . .

The burden is on Defendants to prove indigency. *See United States v. Matalka*, 788 F. App'x 273, 273 (5th Cir. 2019).

Here, neither Defendant has argued that they are indigent for purposes of the JVTA special assessment. Even if they had, the Court finds that neither Mr. Coulter nor Ms. Andrade are indigent for purposes of the JVTA. Although Mr. Coulter is incarcerated, and Ms. Andrade only recently finished her term of imprisonment, "a district court must impose the assessment unless it finds the defendant could not pay it today—or at any point for the

---

[6] An explanation as it relates to this case helps to further clarify the hybrid approach. Here, Doe 1 is entitled to $198,000. If Ms. Andrade makes a $10,000 payment (and, for the sake of this example, all of it is allocated to Doe 1), she is now only responsible for $59,300. Additionally, the total amount owed to Doe 1 is lessened to $188,000. Because Doe 1 cannot be compensated more than the $198,000 provided for in this order, that, in turn, effectively means that Mr. Coulter is now only responsible for $188,000. If Ms. Andrade pays the entirety of her $69,300 share, she is no longer responsible for any payments to Doe 1, and Mr. Coulter is solely responsible for the remainder. However, if Mr. Coulter pays $69,300, and Ms. Andrade pays nothing, Ms. Andrade is still responsible for her full $69,300 amount, because she has not paid her full share, and Doe 1 has not been made whole.

next twenty years." *Id.* at 273-74 (quoting *United States v. Streaty*, 735 F. App'x 140, 141 (5th Cir. 2018)); *see also United States v. Bonilla*, 743 F. App'x 210, 216 (10th Cir. 2018) (affirming JVTA special assessment and noting that "circuit courts have approved of considering future earning capacity when determining if a defendant is indigent for purposes of a special assessment under § 3014"); *United States v. Easterling*, 811 F. App'x 306, 310 (6th Cir. 2020) (affirming JVTA special assessment "even though Easterling most likely will spend the rest of his life in prison," because "incarceration does not necessarily mean that he cannot earn money in the future").

Therefore, the Court imposes the $5,000 per-count special assessment on Mr. Coulter[7] and Ms. Andrade,[8] pursuant to the JVTA.

## CONCLUSION

The government's Motion for Restitution [Doc. No. 272] is **GRANTED IN PART** and **DENIED IN PART**, as more fully set forth herein. An amended judgment shall be entered for each Defendant.

---

[7] A jury found Mr. Coulter guilty of one count of conspiracy to sex traffic a child in violation of 18 U.S.C. § 1594(c) and one count of child sex trafficking in violation of 18 U.S.C. § 1591(a).

[8] Ms. Andrade pleaded guilty to one count of conspiracy to sex traffic a child in violation of 18 U.S.C. § 1594(c).

**IT IS SO ORDERED** this 1st day of February, 2024.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge