## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | Case No. CR-18-156-D |
| v. | ) | (Case No. CIV-24-628-D) |
| | ) | |
| GERMAINE COULTER, SR., | ) | |
| | ) | |
| Defendant-Movant. | ) | |

## <u>ORDER</u>

Before the Court is Defendant Germaine Coulter, Sr.'s Motion to Vacate, Set Aside, or Correct a Sentence [Doc. No. 412], Supplement [412-1], and Advisement [Doc. No. 419], all filed pursuant to 28 U.S.C. § 2255. The government filed a Response [Doc. No. 429], Defendant filed a Reply [Doc. No. 435], and the government filed a Sur-Reply [Doc. No. 438].

The Court has considered the arguments and authorities set forth in each of Defendant's filings. As an initial matter, and in hopes of providing some clarity due to the abnormally large number of relevant filings, the Court will refer to each filing as follows:

| Document Title | Document Number | Court's Reference |
|---|---|---|
| Motion to Vacate, Set Aside, or Correct a Sentence By a Person in Federal Custody | 412 | "Motion" or "Def.'s Mot." |
| Supplement (Motion Under 28 U.S.C. § 2255) | 412-1 | "Supplement" or "Def.'s Supp." |
| Advisement to Court | 419 | "Advisement" or "Farrell Advisement" |
| Government's Response | 429 | "Response" or "Gov't Resp." |
| Defendant's Reply | 435 | "Reply" or "Def.'s Reply" |
| Government's Sur-Reply | 438 | "Sur-Reply" or "Gov't Sur-Reply" |

## FACTUAL AND PROCEDURAL BACKGROUND

I.    **The underlying proceedings**

A.    **Pre-trial proceedings, trial, and sentencing**

On June 20, 2018, a grand jury indicted Defendant (along with his co-defendant, Elizabeth Andrade) and charged him with the following:

- Conspiring to commit child sex trafficking (Count 1); and

- Child sex trafficking with respect to Jane Doe 1 (Count 2).

[Doc. No. 1]. On June 29, 2018, the same day as his arraignment, Mr. Bill Zuhdi was appointed to represent Defendant. [Doc. No. 26].

On August 16, 2018, Mr. Zuhdi filed an unopposed motion for psychiatric examination of Defendant [Doc. No. 52], and the Court set a hearing for August 29, 2018 [Doc. No. 53]. After the hearing, the Court granted the unopposed motion, and Defendant was committed to the custody of the Attorney General so that a psychiatric examination could be conducted to determine his competency to stand trial. [Doc. No. 55].

On November 13, 2018, while Defendant was still undergoing the above-mentioned psychiatric examination, a grand jury issued a three-count Superseding Indictment [Doc. No. 64] charging Defendant with the original Count 1 and Count 2, but also adding a count of child sex trafficking with respect to Jane Doe 3 (Count 3).

On December 5, 2018, the psychiatric evaluation [Doc. No. 68] was completed by Dr. Cynthia A. Low, and the Court set a competency hearing for March 15, 2019 [Doc. No. 75]. After the hearing, the Court entered an order [Doc. No. 78] finding Defendant

competent to stand trial. On March 29, 2019, Defendant was arraigned [Doc. No. 80] and

pled not guilty to the Superseding Indictment, and his trial was set for May 14, 2019.

After a continuance, Defendant's case proceeded to trial on July 15, 2019.[1] In its

published decision affirming Defendant's underlying conviction and custodial sentence,

the Tenth Circuit thoroughly, yet succinctly, set forth the relevant facts presented at trial:

> For many years, Mr. Coulter was a pimp in the Oklahoma City area. Upon release from a five-year state prison term in 2017, he conscripted an underage girl, "Doe 2," to recruit a schoolmate, "Doe 1," to perform sex work for him. He gave Doe 1 a ride home from school, proposed that she work for him, and promised her money and gifts in return. After Doe 1 expressed interest, Elizabeth Andrade, one of Mr. Coulter's longtime sex workers, took pictures of Doe 1 in various stages of undress and sent them to Mr. Coulter. He forwarded the photos to potential clients with messages suggesting that Doe 1 would perform sex acts for money. Ms. Andrade also sent the photos to potential clients and used one of the photos to advertise Doe 1's services online.
>
> Doe 1 had sexual encounters with clients for money. Mr. Coulter gave her detailed instructions about how much she should charge and when to collect the money. He also told Ms. Andrade to teach Doe 1 how to perform various sex acts. Ms. Andrade took Doe 1 on a "call" with her, and both of them had sex with the client.
>
> Around the same time, Mr. Coulter attempted to recruit another underage girl, "Doe 3." He gave Doe 3 a ride home from school and asked whether she wanted to earn money by "prostitut[ing] [her]self with the other girls." Doe 3 told Mr. Coulter she would "think about it," but she had no interest in working for him and never did.

*United States v. Coulter*, 57 F.4th 1168, 1176 (10th Cir. 2023) (internal citations omitted).

On July 22, 2019, the jury found Defendant guilty as to Counts 1 and 2 of the

Superseding Indictment. [Doc. No. 197]. However, the jury was deadlocked as to Count 3,

---

[1] On July 19, 2018, Defendant's co-defendant, Ms. Andrade, pleaded guilty to one count of Conspiracy to Commit Child Sex Trafficking [Doc. Nos. 38-43].

and, after giving the jury a modified *Allen* instruction, the Court declared a mistrial as to Count 3. [Doc. No. 192].

On August 5, 2019, Defendant filed a motion for new trial [Doc. No. 200], arguing: (1) the jury verdict was against the manifest weight of the evidence; (2) the government, in bad faith, introduced improper hearsay evidence at trial; and (3) the government failed to prove the phone communications moved across state lines. On November 15, 2019, the Court denied Defendant's motion for new trial. [Doc. No. 231].

On September 28, 2021, the Court sentenced Defendant to 360 months' imprisonment as to Counts 1 and 2, to be served concurrently, and a lifetime of supervised release as to both counts. [Doc. No 298].

**B.    Defendant's appeal of his conviction and custodial sentence**

Defendant timely appealed his conviction and custodial sentence [Doc. No. 300]. On appeal, Defendant argued:

A. The evidence was insufficient to support the guilty verdict;

B. The district court improperly admitted testimony about the deaths of [two women who formerly worked for Defendant and Ms. Andrade];

C. The behavior by Doe 1's guardian *ad litem* was improper bolstering;

D. The district court erred in its post-trial interactions with the jury; and

E. The convictions should be reversed based on cumulative error.

*Coulter*, 57 F.4th at 1178 (internal footnote omitted).[2] On January 18, 2023, the Tenth Circuit affirmed Defendant's conviction and custodial sentence, *id.* at 1193, and later

---

[2] At Defendant's sentencing, the Court indicated that restitution would be determined at a later date. As more fully laid out in the Court's order on the government's motion for restitution, final

denied Defendant's petition for rehearing, *United States v. Germaine Coulter, Sr.*, No. 21-6118, Order Denying Petition for Rehearing [Doc. No. 104] (10th Cir. Feb. 2, 2023). On June 12, 2023, the Supreme Court denied Defendant's petition for writ of certiorari. *Coulter v. United States*, 143 S. Ct. 2627, 216 L. Ed.2d 1218 (Mem.) (2023).

## II.    The instant § 2255 Motion

On June 12, 2024, Defendant filed a *pro se* § 2255 Motion. In his Motion, Defendant raises the following grounds for relief:

- Ground One: Ineffective assistance of trial counsel in failing to hire an expert to opine as to Mr. Coulter's Mental state at the time of the crime (mens rea), and evaluate whether a defense of insanity could be pursued.

- Ground Two: Mr. Coulter's 6th/8th Amendment rights were violated by allowing public disclosure of jury deliberations and the split among jurors, and by the coercion of one juror to change her vote to guilty.

- Ground Three: Denial of due process under the 5th Amendment for prosecutorial misconduct in eliciting inflammatory and highly prejudicial Hearsay regarding two wholly unrelated murders, information that was not submitted to the Court as 404(b) evidence or otherwise permissible. Confrontation Clause violation under the 6th Amendment for allowing hearsay.

- Ground Four: Improper Bolstering of a witness.

- Ground Five: Ineffective Assistance of Trial Counsel (various grounds), including failure to raise contemporaneous objections, thereby waiving issue for appeal; failure to call any witnesses; failure to file a motion to suppress (cell phone evidence) or for a *Franks* hearing related thereto;

---

determination of restitution was delayed for numerous reasons. *See* 2/1/2024 Order [Doc. No. 367] at 2-4. Ultimately, the Court conducted a hearing and ordered restitution in the amount of $198,000 as to Jane Doe 1 and $188,000 as to Jane Doe 2. *Id.* Defendant separately appealed the Court's restitution order, and the Tenth Circuit recently affirmed. *See United States v. Germaine Coulter, Sr.*, No. 24-6026, Order [Doc. No. 74] (10th Cir. Apr. 15, 2025). Defendant does not raise the restitution award in the instant Motion.

failure to object to untimely discovery submitted by the Government on the eve of trial.

- Ground Six: Ineffective Assistance of Appellate Counsel (various grounds), including failure to argue plain error, thereby waiving the argument(s) on appeal.

- Ground Seven: *Brady* and/or *Giglio* violation by the Prosecutor through the testimony of Doe 1.

- Ground Eight: Cumulative Error.

Def.'s Mot at 4-8; Def.'s Supp.[3]

On the same day Defendant filed his Motion and Supplement, his appointed counsel, Ms. Alyssa Donovan Farrell, moved for leave to file a supplement [Doc. No. 413]. The Court granted Ms. Farrell's request, and, on August 21, 2024, Ms. Farrell filed an Advisement to the Court regarding her more thorough review of Defendant's Motion and research regarding the grounds raised therein. In the Advisement, Ms. Farrell states she counseled Defendant to amend or withdraw the Motion, but Defendant declined. *Id.* at 2-3. Ms. Farrell further states that she cannot ethically "make the argument that Mr. Zuhdi's performance was deficient and that the deficient performance was prejudicial." *Id.* at 4. As for the alleged *Brady* and *Giglio* violations, Ms. Farrell states Defendant is entitled to discovery, and potentially a hearing, on the issue. *Id.* at 4-5.

On October 30, 2024, the government filed its Response to Defendant's Motion and Ms. Farell's Advisement. Defendant then sought, and received, leave to file a Reply, which he did on December 23, 2024. In his Reply, Defendant greatly expands on several of the

---

[3] Citations reference the Court's CM/ECF pagination at the top of each page. Further, the Court uses Defendant's own wording for each ground for relief.

grounds set forth in his Motion, introducing new arguments and supporting evidence.[4]
Based on the new arguments and evidence set forth for the first time in Defendant's Reply,
the government sought, and received, leave to file a Sur-Reply.

## DISCUSSION

### I.    Defendant is barred from raising the issues set forth in Grounds Two, Three, and Four, as he raised, or should have raised, those issues on appeal.

As a preliminary matter, the government contends the arguments set forth in
Grounds Two, Three, and Four were previously raised, or should have been raised, and
decided on appeal of Defendant's judgment of conviction. Gov't Resp. at 19-21; *see also*
Def.'s Mot. at 5-8. Defendant does not offer any argument in response and acknowledges
that, "to the extent the Tenth Circuit Court of Appeals resolved those issues on the merits
on direct appeal, they are no longer viable grounds for collateral attack." Def.'s Reply at 5.

A § 2255 motion is not intended to be a second bite at the apple. Indeed, "[a]bsent
an intervening change in the law of a circuit, issues disposed of on direct appeal generally
will not be considered on a collateral attack by a motion pursuant to § 2255." *United States
v. Pritchard*, 875 F.2d 789, 791 (10th Cir. 1989). Going a step further, the Tenth Circuit has
emphasized that "Section 2255 is not available to test the legality of matters which *should
have been raised on appeal.*" *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994)
(internal alteration omitted and emphasis added) (citing *United States v. Walling*, 982 F.2d
447, 448 (10th Cir. 1992)). Unless Defendant can "show cause excusing his procedural

---

[4] It is not entirely clear what changed for Defendant, and Ms. Farrell, between the filing of the Advisement and Reply.

default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed," he is barred from presenting issues in the instant Motion that he raised, or should have raised, on direct appeal. *United States v. McGaughty*, 670 F.3d 1149, 1159 (10th Cir. 2012).

Here, the Tenth Circuit addressed arguments that Defendant now makes in Grounds Two, Three, and Four. *See Coulter*, 57 F.4th at 1189-93 (Ground Two), 1180-86 (Ground Three), 1186-88 (Ground Four). And as the government notes, although Defendant did not argue that his "Eighth Amendment rights were violated in Ground Two by the Court's interaction with the jurors during deliberation," "[h]e did . . . argue that his Sixth Amendment right was violated in this context." Gov't Resp. at 21. The Court agrees that Defendant "had the opportunity to challenge the Court's interactions with jurors in his direct appeal [and did in fact do so in the Sixth Amendment context]," but he failed to invoke the Eighth Amendment-based argument he makes in the instant Motion. *Id.*

Defendant raised, or should have raised, on direct appeal the issues set forth in Grounds Two, Three, and Four of his Motion. And he does not "show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or . . . that a fundamental miscarriage of justice will occur if his claim[s] [are] not addressed." *McGaughty*, 670 F.3d at 1159. Therefore, the Court will not consider those grounds.

## II.    Defendant fails to satisfy either *Strickland* prong as to any of his ineffective-assistance-of-counsel claims.

To demonstrate ineffective assistance of counsel, a defendant must satisfy the two-prong inquiry set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), by showing: "(1)

that his counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance was prejudicial to his defense." *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998) (citing *Strickland*, 466 U.S. at 688, 694). "Courts are free to address these two prongs in any order, and failure under either is dispositive." *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (citing *Strickland*, 466 U.S. at 697).

The court's "review of counsel's performance under the first prong of *Strickland* is a 'highly deferential' one." *United States v. Holloway*, 939 F.3d 1088, 1103 (2019) (quotation marks omitted). Indeed, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Accordingly, in reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Defendant "bears the heavy burden of overcoming that presumption." *Holloway*, 939 F.3d at 1103 (internal quotation marks omitted).

As for *Strickland*'s prejudice prong, Defendant must establish "that there is a reasonable probability that, but for counsel's error, 'the result of the proceeding would have been different.'" *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) (quoting *Strickland,* 466 U.S. at 688). In other words, Defendant must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial; it does not require that the petitioner

show that counsel's deficient conduct more likely than not altered the outcome in the case." *Byrd*, 645 F.3d at 1168 (internal citations and quotation marks omitted). "[M]ere speculation is not sufficient to satisfy this burden." *Id.* (citing *United States v. Boone,* 62 F.3d 323, 327 (10th Cir. 1995)).

### A.    Ground One

#### 1.    Defendant's position

Defendant argues ineffective assistance of counsel because Mr. Zuhdi failed to "hire an expert to opine as to [his] Mental state at the time of the crime (mens rea), and evaluate whether a defense of insanity could be pursued." Def.'s Mot. at 4. More specifically, Defendant contends that, despite the fact he was determined competent to stand trial, his mental state at the time he committed the crime is an entirely different inquiry, and Mr. Zuhdi should have hired an expert witness to "evaluate the viability of an insanity defense." Def.'s Reply at 7. Defendant relies on the affidavits of his mother, Sharon Millirons [Doc. No. 435-1], and Jane Doe 2 [Doc. No. 435-2], as well as portions of the trial transcript, all of which generally describe Defendant's demeanor at the time of his crimes as "weak," sick," and the like. *Id.* at 6-7.

As for *Strickland*'s prejudice prong, Defendant argues the "evidence supports the alleged crime having occurred while Mr. Coulter was in a diminished mental state." *Id.* Therefore, because Defendant's mental state was an essential element of the crime charged, the "[f]ailure to submit expert testimony to explain the evidence supporting insanity or even just the elements of knowledge and intent, based upon Mr. Coulter's evolving mental state as he recovered from his coma, is prejudicial." *Id.* at 8-9.

10

### 2.    The government's position

In response, the government relies on Mr. Zuhdi's affidavit [Doc. No. 429-1], in which he states that, after Defendant was determined competent to stand trial, he reviewed "evidence, filings, discussed strategy, options, and prepared for trial" with Defendant. Gov't Resp. at 12-13. Based on that, along with the forensic evaluation and his approximately 36 years' experience as a practicing attorney, Mr. Zuhdi had no reason to believe an insanity defense was viable or worth pursuing, and thus his performance was not deficient. Gov't Sur-Reply at 4-5.

As for the prejudice prong, the government emphasizes Defendant's "claim speaks in mere possibilities, not probabilities." *Id.* at 5. Critically, the government continues, "Defendant offers no medical evidence or expert opinion to suggest there is a reasonable probability he suffered from a *severe* mental disease or defect at the time of the crime— between on or about January 1, 2018, and on or about February 19, 2018." *Id.* (emphasis in original). The evidence Defendant relies on—the trial testimony of Megan Mullins and the affidavits of Ms. Millirons and Jane Doe 2—is "hardly sufficient," the government contends, "to show a reasonable probability that Mr. Coulter suffered from a *severe* mental disease that rendered him 'unable to appreciate the nature and quality or the wrongfulness of his acts.'" *Id.* at 6 (emphasis in original). The government further argues that Defendant fails to "establish how further psychological evaluation would negate specific intent." *Id.* Boiled down, the government contends that Defendant "cannot demonstrate the outcome of the trial would have been different had a second expert been hired, as required by *Strickland.*" *Id.* at 7-8.

11

### 3.    Analysis

Upon careful consideration, the Court finds that Defendant fails to establish that Mr. Zuhdi was ineffective. Mr. Zuhdi was aware, at least to some extent, of questions regarding Defendant's competency to stand trial. That is likely why Mr. Zuhdi, with no opposition from the government, sought a forensic examination to determine whether Defendant was competent to stand trial. But, as Mr. Zuhdi states in his affidavit, the resulting forensic evaluation, along with his extensive interactions with Defendant leading up to trial and his approximately 36 years' experience as a practicing attorney, did not give him any reason to believe an insanity defense was viable.[5] *See* Zuhdi Aff., ¶¶ 3 (page 2), 2-5 (pages 2-3).[6]

Therefore, the Court is satisfied that Mr. Zuhdi's decision not to retain an expert to explore the possibility of an insanity defense "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also United States v. Stanley*, 550 F. App'x 588, 591 (10th Cir. 2013) ("The psychologist concluded that Mr. Stanley was competent[.] . . . The record does not suggest any reason for defense counsel to question this evaluation. Thus, defense counsel's decision not to order a second evaluation was reasonable." (internal citation omitted)); *Elam v. Denney*, 662 F.3d 1059, 1066 (8th Cir. 2011) ("Even when the initial evaluation by a mental health expert has failed to support a

---

[5] It is worth noting that Defendant does not argue that an insanity defense *was* viable, but, despite that viability, Mr. Zuhdi failed to assert it. Rather, Defendant simply argues that Mr. Zuhdi should have explored whether an insanity defense was *potentially* viable.

[6] To be clear, the Court is not suggesting that a finding that Defendant was competent to stand trial automatically foreclosed an insanity defense. But, for rather obvious reasons, the two issues are closely related, and, in the Court's view, the forensic evaluation goes to whether Mr. Zuhdi's decision was reasonable.

competency or insanity defense, we have repeatedly rejected ineffective assistance claims based upon counsel's failure to obtain and present testimony by additional mental health experts.").[7]

The Court further finds that Defendant's arguments going to the prejudice prong are speculative and do not show a probability sufficient to undermine confidence in the outcome of the trial. As the government notes, Ms. Millirons's affidavit states Defendant appeared to have a diminished mental capacity due to a coma months before the offense. But Ms. Millirons, through her affidavit, speaks in generalities, which does little to establish Defendant was suffering from a severe mental disease or defect at the time of his

---

[7] Beyond the general presumption of reasonableness, "*Strickland* further presumes that 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690). "Unlike the general presumption that an attorney acted objectively reasonably because his decision *might* have been made for legitimate strategic reasons, which automatically applies in all cases, this second, virtually unchallengeable presumption of reasonableness operates only where it is shown (1) that counsel made a strategic decision and (2) that the decision was adequately informed." *Id.* (quoting *Strickland*, 466 U.S. at 689, 690-91) (internal citation and quotation marks omitted) (emphasis in original). "*Strickland's* presumptions—the presumptions (1) that counsel's actions were objectively reasonable because they *might* have been part of a sound trial strategy and (2) that actual strategic choices made after thorough investigation are virtually unchallengeable, should not obscure the overriding, and ultimately determinative, inquiry courts must make under *Strickland's* deficient performance prong: whether, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness." *Id.* (quoting *Strickland*, 466 U.S. at 689-90, 688) (internal citation and quotation marks omitted) (emphasis in original).

In the Court's view, there is a reasonable argument that *Strickland*'s "virtually unchallengeable" presumption should apply. After all, it appears that Mr. Zuhdi made the "strategic decision" to not retain an expert to explore an insanity defense, and his decision appears to have been "adequately informed" by Defendant's forensic evaluation, along with the other factors discussed above. *See id.* Regardless of which *Strickland* presumption applies, Defendant fails to show, "after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness." *Id.*

crimes, and does not tend to show that Defendant lacked the specific intent required to be convicted of the charged crimes. *See* 18 U.S.C. § 17(a); *see also Zajac v. United States*, 154 F. Supp. 3d 1230, 1236 (D. Utah 2015) ("Allegations that are speculative, vague, or conclusory are insufficient to satisfy the *Strickland* standard."). Indeed, much of the evidence presented at trial supports the conclusion that Defendant knew precisely what he was doing and acted in accordance with that understanding. *See, e.g., Coulter*, 57 F.4th at 1179 ("[T]he Government introduced Mr. Coulter's phone records, which contained (1) explicit pictures of Doe 1, (2) text messages soliciting clients for Doe 1, and (3) instructions directing Doe 1 to take money from clients in exchange for sex.").

The same is true for Jane Doe 2's affidavit and the trial testimony of Megan Mullins, who both state, in some fashion, that Defendant was not acting like himself and seemed to be in some sort of mentally diminished state. Such statements, from non-professionals, "[a]t best . . . show[] a diminished capacity—a defense the [Insanity Defense Reform Act of 1984] does not allow—that occurred months before the crime." Gov't Sur-Reply at 6. Indeed, the "IDRA bars the introduction of evidence of a defendant's mental disease or defect to demonstrate that he lacked substantial capacity to control his actions or reflect upon the consequences or nature of his actions." *United States v. Brown*, 326 F.3d 1143, 1146 (10th Cir. 2003). Although in specific, limited circumstances, "psychological or psychiatric evidence that negates the essential element of specific intent can be admissible," this is not such a case, as Defendant fails to "connect his mental condition with any legally acceptable theory that he lacked specific intent." *See id.* at 1147-48.

14

Further, Jane Doe 2's affidavit and the trial testimony of Ms. Mullins, like Ms. Millirons's affidavit, are vague and conclusory and fall well short of showing a probability sufficient to undermine confidence in the outcome of the trial. *See Kidwell v. Martin*, 480 F. App'x 929, 934 (10th Cir. 2012) ("We have repeatedly stated that such conclusory allegations do not satisfy *Strickland* 's prejudice element.").

In conclusion, Defendant fails to carry his burden in showing that Mr. Zuhdi's decision not to retain an expert to explore the viability of an insanity defense was deficient or, even if it were, that the deficient performance was prejudicial to his defense.

## B.    Ground Five

### 1.    Defendant's position

Defendant argues Mr. Zuhdi was ineffective because he:

> fail[ed] to raise contemporaneous objections, thereby waiving [the] issue for appeal; fail[ed] to call any witnesses; fail[ed] to file a motion to suppress (cell phone evidence) or for a *Franks* hearing related thereto; [and] fail[ed] to object to untimely discovery submitted by the Government on the eve of trial.

Def.'s Supp. at 1. As for the failure to raise contemporaneous objections, Defendant further elaborates that the Tenth Circuit "never resolve[d] on the merits the question of whether the testimony from Megan Mullin[s] and Elizabeth Andrade about Ms. Diaz's and Ms. Biggers's deaths were hearsay and/or violative of the Confrontation Clause . . . because it opined trial counsel waived those arguments by [] failing to preserve the error." Def.'s Reply at 9. Defendant then concludes that, "but for counsel's failure to proper[l]y object and preserve the error, thereby [waiving] appellate review on the merits, the result would have been different." *Id.* at 9-10.

As for the failure to call any witnesses, Defendant contends that Ms. Millirons, in addition to testifying to his "impaired mental state," could have testified to the mental state of Jane Doe 2, including her motive to lie, pattern of manipulative behavior, and history of false accusations. *Id.* at 10. Defendant further contends Ms. Millirons could have provided testimony that undermined the credibility of Ms. Andrade. *Id.* at 10-11.

As for the failure to file a motion to suppress or for a *Franks* hearing, Defendant's counsel acknowledges she has not received discovery in this case, but nevertheless maintains Mr. Zuhdi should have filed a motion to suppress the contents of Defendant's cellphone. *Id.* at 11.

And as for the failure to object to untimely discovery, Defendant concedes that Mr. Zuhdi's affidavit "appears to foreclose this argument." *Id.* at 12.

## 2. The government's position

In response, the government, as it relates to Defendant's argument regarding contemporaneous trial objections, notes Mr. Zuhdi "raised appropriate objections to contemporaneous evidence and [his] decisions not to object at times were reasonable in the trial, was trial strategy, and were in [Mr. Coulter's] best interest." Gov't Resp. at 14. At bottom, the government maintains that Mr. Zuhdi's trial performance was within "the wide range of professionally competent assistance." *Id.* (quoting *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010)).

As for Mr. Zuhdi failing to call any witnesses, the government relies on Mr. Zuhdi's affidavit, in which he states that he "talked to [Defendant] many times and asked him for any information on witnesses that he could potentially call at trial." Gov't Resp. at 15.

However, after exploring several potential witnesses, Mr. Zuhdi either never heard back from the individual or made a strategic decision not to call them as a witness at trial. *Id.* Further, as it relates to Ms. Millirons potentially testifying, the government points to Mr. Zuhdi's strategic decision not to call her. Gov't Reply at 9-10.

As for Mr. Zuhdi failing to file a motion to suppress or for a *Franks* hearing, the government first notes that Mr. Zuhdi did not discern a basis to attack the search warrants, and he filed all potentially meritorious motions on Defendant's behalf. Gov't Resp. at 17. The government further contends that trial testimony refutes Defendant's allegation that his phone was acquired by Ms. Mullins while acting at the direction of law enforcement. Specifically, the government points to Ms. Mullins's testimony that she found Defendant's cellphone in his truck and later gave it to law enforcement. Gov't Reply at 10-11.

### 3.    Analysis

Upon careful consideration, the Court finds Defendant fails to establish either deficient performance by Mr. Zuhdi or resulting prejudice. The Court is convinced each of Mr. Zuhdi's actions, or inactions, raised in Ground Five fall squarely within the "wide range of professionally competent assistance." *See Hooks*, 606 F.3d at 723. The Court addresses Defendant's arguments in the opposite order in which they were raised in Defendant's supplement. *See* Def.'s Supp. at 1.

First, Defendant concedes that the argument regarding the government providing evidence on the "eve of trial" lacks support. *See* Def.'s Reply at 12. This is consistent with Mr. Zuhdi's affidavit, in which he states that "there was no evidence received from the

government that was on the 'eve of trial.'" Zuhdi Aff., ¶ 19. In any event, Defendant fails to carry his burden on this argument, and the Court need not address it further.

Second, Defendant fails to carry his burden regarding the argument that Mr. Zuhdi should have moved to suppress the contents of Defendant's cellphone (or moved for a *Franks* hearing). Defendant's argument—which can fairly be described as speculative, at best—provides no specifics regarding why Mr. Zuhdi should have filed said motions, pointing only to the "open question" as to whether Ms. Mullins acted as a law enforcement agent. *See* Def.'s Reply at 11. Without (much) more, Defendant cannot overcome the strong presumption of Mr. Zuhdi's adequate representation, and Defendant's counsel's speculation falls well short of showing any sort of prejudice.

Third, Defendant fails to carry his burden regarding the argument that Mr. Zuhdi should have called certain defense witnesses. Recall, Defendant maintains that calling his mother, Ms. Millirons, as a witness could have undermined Jane Doe 2's and Ms. Andrade's credibility and "refuted a recording" of a statement she purportedly made to an investigator. *See* Def.'s Reply at 10-11; Millirons Aff., ¶¶ 2-3, 20. But the government never introduced a statement Ms. Millirons made to an investigator, and, even assuming her trial testimony would have undermined the credibility of certain other witnesses (which is far from certain), Mr. Zuhdi states that his decision not to call Ms. Millirons was based on his belief that doing so could have exposed facts negative to the defense. Mr. Zuhdi's decisions regarding which witnesses to call, or not call, "fall[] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The Court will not second-guess those decisions, especially considering the speculative nature of Defendant's arguments.

*See id.*; *see also Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998) ("Generally, the decision whether to call a witness rests within the sound discretion of trial counsel."). Defendant further fails to carry his burden in showing how the failure to call any of the aforementioned witnesses undermines confidence in the outcome of the trial. *See Kidwell*, 480 F. App'x at 934.

Fourth, and last, Defendant fails to carry his burden regarding Mr. Zuhdi failing to raise contemporaneous objections during trial. The government points to numerous objections Mr. Zuhdi raised during trial, some of which were overruled and some of which were sustained. *See* Gov't Resp. at 14. In his affidavit, Mr. Zuhdi states that he "raised appropriate objections to contemporaneous evidence and [his] decisions not to object at times were reasonable in the trial, [were] trial strategy, and were in [Defendant's] best interest." Zuhdi Aff., ¶ 7. To the extent Defendant raises a generalized argument that Mr. Zuhdi should have objected more at trial, the Court finds such decisions fall within the discretion afforded trial counsel.

The only specific instance Defendant points to—testimony from Ms. Mullins and Ms. Andrade regarding the deaths of Elizabeth Diaz and Jamie Biggers—is unconvincing. It is true that Mr. Zuhdi did not raise a Confrontation Clause objection at trial and thus waived the issue on appeal. *Coulter*, 57 F.4th at 1182. However, the Tenth Circuit noted that the Confrontation Clause argument "also fails on the merits because [Defendant] concedes in his reply brief that he 'never claimed the hearsay testimony regarding the killing/deaths of Ms. Diaz and Ms. Biggers were testimonial statements.'" *Id.*, n.7 (internal citation omitted). And Mr. Zuhdi did raise a hearsay objection to Ms. Mullins's testimony

about Ms. Diaz's death, so it is unclear what Defendant maintains Mr. Zuhdi should have done in that instance. *See id.* at 1184 ("The district court overruled Mr. Coulter's hearsay objection . . . .").

But even if Mr. Zuhdi's performance was deficient, Defendant fails to show how the testimony undermines confidence in the outcome of the trial. To be sure, there was "overwhelming evidence of [Defendant's] guilt," and "[n]o part of the Government's case depended on Ms. Diaz's [or Ms. Biggers's] death." *Id.* Defendant's conclusory assertion that "the result would have been different" had Mr. Zuhdi objected on both grounds at trial is speculative and insufficient to satisfy *Strickland*'s prejudice prong. *See* Def.'s Reply at 9-10; *see also Kidwell*, 480 F. App'x at 934 ("Mr. Kidwell argues that 'counsel's deficiencies resulted in an outcome different than that which would have been reached had counsel acted in accordance with the prevailing professional norms.' We have repeatedly stated that such conclusory allegations do not satisfy *Strickland*'s prejudice element." (internal citation omitted)).[8]

## III.    Defendant fails to establish a *Brady* or *Giglio* violation.

The law governing alleged *Brady* or *Giglio* violations is well-established:

In order to establish a *Brady* or *Giglio* violation, the defendant bears the burden of establishing (1) that the prosecution suppressed the evidence, (2) that the evidence was favorable to the accused, and (3) that the evidence was material. According to the Supreme Court, the criterion of materiality is met only if there is a reasonable probability that the outcome of the trial would have been different had the evidence been disclosed to the defense.

---

[8] For largely the same reasons, the Court finds that Defendant fails to carry his burden on either *Strickland* prong as it relates to Ground Six. *See* Def.'s Supp. at 1-2.

*United States v. Gonzalez-Montoya*, 161 F.3d 643, 649 (10th Cir. 1998) (internal citations and quotation marks omitted).

### A.    Ground Seven

#### 1.    Defendant's position

Defendant contends that he "learned within the last week [of filing his § 2255 motion] that Doe 1 was on Xanax at the time of the crime and her testimony before the Court, that the Prosecutor knew this, and that the Prosecutor did not disclose it to the defense team." Def.'s Supp. at 2. Further, according to Defendant, Ms. Millirons "provided exculpatory information different from what was presented through testimony of Doe 1 and the agent, none of which was provided to the defense." *Id.* In her Advisement, Ms. Farrell takes the allegation further and states that Jane Doe 2 "affirmatively contacted Counsel directly to report that she and another witness were under the influence of narcotics during either their interviews and/or their testimony before the Court, and that [the] Government was aware of this fact." Farrell Advisement, ¶ 9. However, Ms. Farrell does not state who the other witness is.

#### 2.    The government's position

In response, the government cites to myriad portions of the trial transcript in which various witnesses testified about drug use generally, as well as Jane Doe 1's and Jane Doe 2's drug use specifically. *See* Gov't Resp. at 23-25. Mr. Zuhdi also cross-examined each of the witnesses about their drug use. *See id.* at 25-26. All of this, the government contends, shows that Jane Doe 1 and Jane Doe 2 "both used various drugs, including Xanax, at the

time of the offense" and that Defendant knew this long before he filed the instant Motion. *Id.* at 26-27.[9]

As for Defendant's allegation that Jane Doe 1 and Jane Doe 2 were using drugs at the time of their interviews, the government states that it "has no knowledge of this, but it understands its duty to provide any *Giglio*-related information and would have disclosed this to the defense if there had been any information to disclose." *Id.* at 27. And as for the allegation that Jane Doe 1 and Jane Doe 2 were using drugs when they testified during trial, the government notes Jane Doe 1 "stated that she had been drug free for a few months and was not using any drugs 'right now,'" and "there was no evidence that [Jane Doe 2] was under the influence of drugs at the time she testified." *Id.*

### 3.    Analysis

Upon careful consideration, the Court finds that Defendant has failed to carry his burden in establishing a *Brady* or *Giglio* violation. Defendant relies primarily on Jane Doe 2's affidavit, which merely says: "I was under the influence of Xanax when I spoke with the counselor." Jane Doe 2 Aff., ¶ 4. The government states that it "believes this allegation relates to Doe 2's meeting with a school guidance counselor, rather than any statement she made at trial or to law enforcement." Gov't Reply at 12. There is nothing before the Court—and certainly nothing cited by Defendant—indicating otherwise.

Moving to the factors Defendant must establish, he falls short as to each. First, there is nothing before the Court establishing that the government possessed any *Brady* or *Giglio*

---

[9] The government also notes that Defendant stated in his forensic evaluation that Jane Doe 2 used "marijuana, cocaine, and Xanax." Gov't Resp. at 28.

material (other than the material the government produced, as set forth in its Sur-Reply), much less that the government possessed such material and suppressed it.

Second, it is unclear to the Court whether the fact that Jane Doe 1, Jane Doe 2, or other witnesses were using Xanax (or other drugs) at various times is favorable to Defendant. Presumably, Defendant's argument is that, if these individuals were using drugs during the events giving rise to the charges against Defendant or during interviews and testimony, their version of events would have been less likely to be believed or, at the very least, their credibility could have been called into question. Without more, however, that is pure speculation. *See Smith v. Sec. of N.M. Dep't of Corrections*, 50 F.3d 801, 825 (10th Cir. 1995) ("Such [*Brady* and *Giglio*] evidence is evidence favorable to an accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." (internal citation and quotation marks omitted)). Defendant does not explain with any specificity how the various witnesses' drug use would have impacted trial, much less how it would have made the difference between conviction and acquittal.

Third, even assuming the government suppressed evidence favorable to Defendant, he fails to show that the evidence was material. In other words, when viewing "the suppressed evidence's significance in relation to the record as a whole," Defendant fails to show that "the result of the proceeding could reasonably have been different had" Jane Doe 1's and Jane Doe 2's (and potentially another unnamed witness's) drug use been disclosed to the defense. *See id.* at 827, 833 (quoting *United States v. Hughes*, 33 F.3d 1248, 1252 (10th Cir. 1994)). Again, as the Tenth Circuit noted, the jury in this case was presented with

"overwhelming evidence of [Defendant's] guilt." *Coulter*, 57 F.4th at 1184.[10] It strikes the Court as highly unlikely that evidence of witnesses' drug use would have resulted in a different outcome at trial.

## IV.    Defendant fails to establish cumulative error.

To show cumulative error, Defendant must identify errors that rendered "the trial [] so fundamentally unfair as to deny [him] due process." *United States v. Christy*, 916 F.3d 814, 840 (10th Cir. 2019) (quotations omitted). The Court should "consider cumulative error only if [Defendant] has shown at least two errors that were harmless." *Id*. at 827. Then the "question [becomes] whether the two or more harmless errors together constitute prejudicial error." *Id*.

### A.    Ground Eight

#### 1.    Defendant's position

Defendant asserts a cumulative-error argument out of "an abundance of caution," but, aside from a blanket statement referencing all of the grounds raised, does not actually identify any errors that rendered the trial fundamentally unfair. *See* Def.'s Supp. at 2; *see generally* Farrell Advisement; Def.'s Reply.

---

[10] In his Supplement, Defendant states his "mother provided exculpatory information different from what was presented through testimony of Doe 1 and the agent, none of which was provided to the defense." Def.'s Supp. at 2. But Defendant fails to elaborate on what "exculpatory information" he is referencing, and Ms. Millirons's affidavit does not mention any such information. Without even basic information as to the nature of this allegedly exculpatory information, the Court cannot conduct any sort of meaningful analysis.

### 2.    The government's position

In response, the government contends that Defendant "has not established that any of his allegations were errors, let alone harmless errors." Gov't Resp. at 30. Because Defendant's claims contain "only mere speculation," the government asks the Court to reject Defendant's cumulative-error argument. *Id.*

### 3.    Analysis

As an initial matter, it is unclear whether Defendant maintains his cumulative-error argument throughout his filings. In any event, the Court finds that, because Defendant has failed to show "at least two errors that were harmless," it "need not progress further in the cumulative error analysis." *Coulter*, 57 F.4th at 1193 (quoting *Christy*, 916 F.3d at 827).

## CONCLUSION

For the reasons set forth herein, Defendant's § 2255 Motion is denied. An evidentiary hearing is not required where the "case record conclusively shows the prisoner is entitled to no relief." *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). Under the applicable standard, an evidentiary hearing is not required here.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to a movant. A COA may issue only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For claims denied on the merits, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims denied on procedural grounds, he must show "that jurists of reason would find

it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Upon consideration, the Court finds neither standard is met in this case, and a COA should be denied.

      **IT IS THERFORE ORDERED** that Defendant's Motion to Vacate, Set Aside, or Correct a Sentence [Doc. Nos. 412, 412-1, 419] is **DENIED**. Further, a COA is **DENIED**. A separate judgment shall be entered accordingly.

      **IT IS SO ORDERED** this 3rd day of June, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge